Next case is Cajun Services v. Benton Energy Service, 20-1367. Mr. Callum, please proceed. Good morning, your honors, and thank you. May it please the court, it's indeed an honor and privilege to be before you this morning arguing on behalf of my client, Benton Energy Services, which we refer to as BESCO throughout the argument. Thank you to the court for the precedent at times. This is an opportunity for BESCO to present its appeal to this court on what in our view was a serious miscarriage of justice that took place last summer and subsequent rulings by the court. In our view, the district court clearly was erroneous in its denial of its motion to compel arbitration. Although the court had the standard of the law correct, the court basically created what I will refer to as the AASH standard when it clearly went contrary to undisputed precedent within the Fifth Circuit, which is deemed to be the acceptable regional circuit law which will apply based upon the general guarantee case that I will talk about in a moment. The question here is waiver. The arbitration clause was in delivery tickets which were presented by Cajun. So it was Cajun presumably that was interested in arbitration and you're even questioning whether there's a contract. And so your client first mentioned arbitration early in a footnote to a brief in the first lawsuit and then brought its own lawsuit not mentioning arbitration and then only later after there was substantial discovery and you were close to trial and then you proceeded with trial. And so how is the court abusing its discretion in finding waiver? Judge, thank you for the question. I think it's clear when you listen to my answer. First, let's talk about the nature of the contract. The rental agreement was not a negotiated hands-linked master service agreement. What Cajun did was through a series of actions went from a mere receipt of acceptance of product by unskilled laborers for Benton who picked up the product. Then they morphed into a signature which referenced terms on a website, terms and conditions. Then after they did that for a period of time, they then went to the rental agreement in question which has fine print, small print on the back, onerous terms and conditions that are applicable to this case. It is undisputed that no one with this rental agreement nor was anyone with Benton made aware. Cajun could have easily presented this as a master service contract and allowed for proper negotiations for the parties to agree to it. That is a huge point in this case because, Judge, in all of the cases cited by the district court as well as the plaintiffs where waiver was found, there was never an opportunity for a court to have two motions for summary judgment to decide the issue but allow the issue to go to a jury to determine whether the contract was enforceable. It was not until those motions for summary judgment were denied for questions of fact, the judge ordered the issue to be decided by the jury. Immediately when the jury decided that issue, that this contract was valid, BESCO immediately moved to compel arbitration. Now plaintiff wants the ability to enforce certain terms of the terms and conditions, i.e., misappropriation of product, trade secrets, etc., but on the other hand wants to ignore the arbitration provision. The second point I'd like to make in response to your question, Your Honor, the district court was clearly wrong and my view perhaps even biased in finding that BESCO hid its intent to arbitrate. We have outlined nine separate occasions in our brief with citations which most importantly have not been disputed by the plaintiffs where we clearly and unequivocally placed the court and the plaintiff on notice that in the event this contract is deemed to be valid, we are absolutely reserving our right to compel arbitration. There's no dispute as to that. What this court is trying to do, the district court, and if this court allows that ruling to stand, is that can a defendant such as BESCO waive an affirmative defense in a separate proceeding, which was Cajun 1, when the lawsuit was filed and we're actually determining an issue here in Cajun 2. But, Your Honor, it is undisputed in Cajun 1 that in the footnote we put the parties on notice of our intent. In Cajun 2, it's even more clear. Twice in affirmative defenses, various times in motions, in the pretrial order, in objections to jury instructions, and in fact at trial. The issue here is notice. The Peccio case that we cite, 5th Circuit, 2015, says once a defendant has put the plaintiff on notice of its intent to arbitrate, plaintiff's burden of waiver is higher. The burden is already high because there is a presumption in favor of arbitration as declared by the United States Supreme Court. But here, where there was notice, and read that case carefully and the cases cited in it, which we've noted in our brief, there's no requirement that arbitration be specifically asserted as an affirmative defense, which we in fact did. But the court, the clear error of the district court, was relying upon Cajun 1 and the footnote and the lack of an affirmative defense as a quote-unquote fatal flaw. That is clear error because it was not required. This is Judge Stoll. I just wanted to ask you, I have two questions. One is the relationship between Cajun 1 and Cajun 2 because I understood that Cajun 1, while it was procedurally ended, it was continued in Cajun 2. So procedurally, it's as if it's the same case. But my second question is, when was the footnote first asserted in Cajun 1? How much time had passed between when the case was first filed and you first mentioned arbitration? Your Honor, I'll address the second question first. The footnote was addressed in October of 2017, which was only approximately 10 months after the first lawsuit was filed. But more importantly, before Cajun 2 was filed. And it was brought up at that point when the plaintiff sought affirmative relief on enforcing the terms of the contract. And what about my first question? Because I understood, you know, one of the big questions here is what is the relationship between Cajun 1 and Cajun 2? And there seems to be a disagreement between the parties. You seem to put more emphasis on the fact that you raised the issue immediately in Cajun 2. But I see them as essentially the same case. Well, there's no dispute, Your Honor, that at the time Cajun 2 was filed, Cajun 1 was administratively closed. Cajun 1 was administratively closed because we filed a standing pleading saying that the plaintiffs lack standing to assert certain causes of action in Cajun 1. And plaintiffs, importantly, agreed with that assertion and allowed the case to be dismissed. I think that is a critical point. We all knew that there would be a new filed lawsuit in which all of the causes of action would then be properly pled. And that's where affirmative defenses were filed, motions for summary judgment were filed, and the court was decided the motion for summary judgment and found the contract to be enforceable. Of course, there would have been an immediate motion to enforce arbitration. But until the court, which everyone agrees, the court is the one who has to decide the contract's enforceability. Until the court made that determination, it was not right. BESCO could not have asserted a right to arbitration without a contract. The judge below emphasized that, in his view, it could have been asserted in the alternative. What's your response to that? Well, whether it was asserted in the alternative, the threshold question had to be, was there a contract? Once he decided that there was a question of fact and that issue could not be decided, the alternative position is mute. What's the difference between a judge ordering that the contract is valid and enforceable, and on the second day, we then file a motion to enforce arbitration? With all due respect to the district court, I believe that's a red herring. Whether we file them collectively as an alternative motion or back-to-back should not make a difference in this case. I'll reserve the remaining of my time for rebuttal. Thank you, counsel. We will save it. Mr. Scott, please proceed. Good morning. May it please the court, Walter Scott, on behalf of Appalese BESCO Services, I'm sorry, Cajun Services. This is the first of two separate but related appeals from an adverse jury verdict. The jury verdict is significant in this first appeal because it speaks to all appellants did to affirmatively litigate the case to trial, not once but twice. Judge Stoll mentioned how long did it take for them to drop the footnote, which was ambiguous at best. Counsel indicated 10 months. The more important point, perhaps, is that it was just weeks before the first trial was scheduled to proceed. Counsel indicates that Cajun agreed with the standing issue. No, Cajun did not. However, Cajun did not want to take the held hostage to an argument on appeal. And so, Cajun took the prudent path of agreeing to administratively close the case and refile so as to avert any standing issues following a trial on the merits. Now, in terms of all that that BESCO appellants did, as the court indicated, they filed their own lawsuit. They also filed their own affirmative counterclaims. And they moved for summary judgment on their claims. They participated in discovery, both for fact and expert discovery. And ultimately, they submitted their claims to the jury, even while contending that the very types of claims that they were submitting were subject to arbitration. They nevertheless persisted in trying to submit those claims on their behalf to the jury. A lot of this is, you know, actions speak a lot louder than words in this instance, where BESCO repeatedly and consistently litigates the case on all claims, never tried to limit it to breach of contract, the validity of the contract, but asserted and litigated all claims. Now, the trial judge who presided over these proceedings and the trial itself reviewed at length and delineated at length the totality of circumstances for the precise reason of averting the arguments that are being made today. And the trial court applied correct law under Fifth Circuit and Federal Circuit precedent, which is essentially the same for these purposes, and determined after a rigorous analysis that BESCO had waived arbitration as to all claims by substantially invoking the judicial process in acting inconsistent with any intent to arbitrate, and thereby prejudicing occasion. There is nothing clearly erroneous about the trial court's decision or findings. They are meticulous, rigorous, and well-founded, and they should not be disturbed on appeal. The trial court, in various circumstances, reflects that BESCO is duplicitous and disingenuous in, one, litigating all claims, two, subsequently contending that those claims are subject to arbitration, and thus waiving arbitration as to all claims. As the court pointed out, and as the cases point out, you can't have it both ways. And that is exactly what BESCO has sought to do, not once but twice, first with standing and now with arbitration. With that, your honors, I would defer to our brief subject to any questions and the trial court's decision and yield the remainder of my time. Thank you, counsel. Mr. Callum has some rebuttal time. Brief rebuttal, your honor. Judge Stahl would like to answer one question. You talked about the delay at the beginning in the 10-month time period. One of the principles that I think is very important, as cited in the Republican insurance and the Tenneco Fifth Circuit cases that we cited, is that waiver is a factual determination dependent upon all facts and not solely dependent upon the passage of time. So although that could be one factor, it is clearly not determinative. The second point that I would like to strongly assert is that you're talking about the plaintiffs are making the argument that BESCO could not have it both ways. That is precisely the issue, however, that the Fifth Circuit in general guarantee decided. BESCO was forced, if you read Judge Ashe's opinion and the Ashe standard that he enunciated, to make the case, do we accept that this rental agreement is enforceable and move for arbitration, or do we contest this contract, litigate the case, and forego our right to arbitration? And what the clear precedent of the Fifth Circuit says is no party, including BESCO, should be forced to make that determination and that alternative proceedings are encouraged and in fact are mandated and allowed by law. Why is that important? BESCO preserved its right through nine times to seek arbitration if the contract were found enforceable. What BESCO was forced to then do, we couldn't sit back as a punching bag and allow plaintiffs to proceed with their course of action and causes of action, not knowing ultimately how the jury would rule on that threshold issue. There were certain actions to participate in the litigation that had to take place, but those were consistent with our position that the contract was not valid. For example, pursuing a cause of action on the oral contract or fraud. Those causes of action would have been there in our favor had the jury found that no contract existed. So those positions are congruous and those positions are in harmony with the position that BESCO took. It was not until the judge instructed the jury and the jury came back and found the contract to be enforced that the issue of arbitration was ripe. That is an undisputed point. And when the judge says, well, what else could BESCO have done? Judge Stahl asked one of the questions earlier about, could you have filed the motion in the alternative? And I explained why that was not a tenable position or one that would really be relevant at the end of the day. BESCO had to preserve its right to arbitrate, but on the same time defend the claims of the plaintiff, and in the third position could only aggressively move on arbitration once the jury had rendered its verdict. It's not a situation where BESCO simply invoked arbitration after three years of litigation because of an adverse jury award. Cajun was placed on notice throughout the litigation. Secondly, once the court ruled on the two points that I'd like to raise finally are the court relied upon two cases, Unity Communications versus Singular Wireless and Republic in support of its position for waiver. The Unity Communications Corporation case, in that case, arbitration was properly denied. There was no intent to arbitrate, absolutely none, for three years in the litigation. That case was not even close. In the Republic case, once again, there was no intent to arbitrate made by the party seeking arbitration until days before trial. The court used those opinions to support waiver and totally, in our view, and with all due respect, ignored the clear precedent of the general guarantee case in recognizing the predicament that BESCO was in while preserving its right to defend the contract, saying it was enforceable, but at the same time preserving its right to arbitration. If this judgment were allowed and this ruling is allowed to stand, a party, in my opinion, would no longer have the right to contest the enforceability of a contract and at the same time reserve the right to arbitrate. Thank you, your honors. I appreciate your consideration and time. Thank you, counsel. We will drill down and attempt to reach a proper decision. The case is submitted. The honorable court is adjourned until tomorrow morning at 10 a.m.